# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 446 | DATE | Sept. 14, 2004 |
| CASE TITLE | William J. Ryan | v | Robert Bosch Corp., et al |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOJune 14, 2004CKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☒ Status hearing held and continued to 9/21/04, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ☒ [Other docket entry] Memorandum opinion and order entered. Defendants' motion for summary judgment is denied as to count I and granted as to count II.

(11) ☒ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: GDS

Document Number: 50

SEP 20 2004 date docketed

2004 SEP 17 PM 15:50 U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. RYAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROBERT BOSCH CORP., ROBERT ) <br> BOSCH POWER TOOL CORP., ) <br> AND S-B POWER TOOL CORP. d/b/a ) <br> S-B POWER TOOL COMPANY ) <br> ) <br> Defendants. ) | 03 C 0446 <br> Judge Robert W. Gettleman <br><br> **DOCKETED** <br> SEP 2 0 2004 |

## MEMORANDUM OPINION AND ORDER

Plaintiff William J. Ryan filed the instant lawsuit against his former employer, S-B Power Tool Company ("SBPT"), alleging that SBPT discharged him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 (Count I) and the Illinois Human Rights Act ("IHRA"), 775 I.L.C.S § 5/1-101 (Count II).[1] Plaintiff was fifty two years old at the time he was terminated. Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that plaintiff has failed to rebut defendant's asserted non-discriminatory reason for terminating plaintiff's employment. Defendant also argues that the court lacks subject matter jurisdiction over the IHRA claim. For the reasons stated herein, the court denies defendant's motion as to Count I, and grants defendant's motion as to Count II.

---

[1]Apparently, according to defendant's disclosure statement, SBPT has merged into Robert Bosch Tool Corp., although the parties in their summary judgment pleadings to refer to SBPT as plaintiff's former employer.

1



# FACTS[2]

SBPT designs, manufactures, and markets high-quality power tools. Plaintiff was hired by defendant as an engineer in May 1988, and held a number of positions with defendant until his termination on August 15, 2001. Plaintiff received several promotions during his employment with defendant, and was offered a bonus in or about December 1991 to continue his employment with defendant. From 1998 through the time of his termination, plaintiff worked at the SBPT Chicago headquarters as a manager of advanced development and computer aided design ("CAD"). In this position, plaintiff was responsible for overseeing new product designs and managing the CAD drafting process using an engineering software system.

Plaintiff received an overall performance rating of commendable on his on job performance reviews in January 1997 and January 1998, which was the second-highest of five possible ratings at that time. In January 1999, plaintiff received an overall rating of fully satisfactory, which was the middle of five possible ratings at that time.[3]

In late 1999, SBPT adopted the "New Product Development Process" ("NPDP"), which aimed to improve the new product development process by integrating the marketing and engineering groups within the company. Under the NPDP the marketing department assumes a larger role in the development of new products by researching the needs and preferences of power tool consumers and users before products are designed. Marketing then shares its findings with the engineering department, which evaluates whether the new tools and features can be developed cost effectively by SBPT.

In January 2000, Egbert Schneider ("Schneider"), a vice president of engineering, was transferred to SBPT's Chicago headquarters to oversee the advanced development department in which plaintiff worked. Schneider was thirty nine years old at the time of his transfer. In June

---

[2]Unless otherwise noted, the following facts, taken from the parties' L. R. 56.1 Statements and attached exhibits, are not in dispute.

[3]Neither party submitted a performance review of plaintiff from 2000.

2000 Ann Dow ("Dow") was named director of advanced development. Dow was in her mid-thirties at the time, and has a background in marketing, not engineering. Plaintiff reported to Dow, with dotted-line responsibility to Schneider. Dow and a team of SBPT employees developed an abbreviated version of the general NPDP protocol for implementation specifically in the Advanced Development department.

From early in his employment with SBPT plaintiff worked primarily in an IT capacity, managing digital images and other CAD data for the advanced development department, rather than focusing on engineering projects. Some time in early 2001, plaintiff was given responsibility for at least two engineering projects related to the development of two new products, (1) the soft grip, and (2) the laser arbor. Plaintiff admits that he had not done the work of a project engineer for twelve or thirteen years, and was more familiar with IT work. He claims that defendant made the projects more difficult by removing engineers from his team.

According to plaintiff, the changes in personnel and the implementation of the NPDP caused confusion regarding job responsibilities and the reporting structure, created tension within the advanced development department, and interfered with his efforts to complete his work. To this end, in addition to his deposition, plaintiff submits the affidavit of Barry Jacobs ("Jacobs"), an engineer who worked in the advanced development department in 2000 and 2001 as a member of plaintiff's project team. Defendant responds that any confusion was caused by plaintiff himself, and that plaintiff resisted the implementation of the NPDP and did not adjust to the changes in the advanced development department.

In January 2001 plaintiff's annual review was administered by Dow for the first time, as she had been his supervisor for less than a year. Plaintiff received a below expectations rating in two of the six performance goals, and an overall below expectations rating. Dow wrote in the section of the review titled "Associate Development Needs/Plan" that plaintiff needed to be a more "active manager," "develop a more open dialog and explain his thoughts better to avoid misunderstanding of his intentions," and "respond appropriately to questions and not in a

defensive manner." Plaintiff disputes several of the negative comments on the review, as well as the overall rating. Plaintiff contends that this was the first unsatisfactory review he received while working at SBPT, and that Dow was unqualified to review his job performance. He also alleges that Dow told him on several occasions, prior to the review, that he was innovating and doing a good job.

On April 5, 2001, Dow sent plaintiff an e-mail following an apparent mix-up regarding the testing of a new product. Dow wrote, in part, "Bill, this is the second example of how we need to be talking more as a team (the first was the disconnect on the laser modules that you were ordering) - you need marketing feedback, which is why I'm here." Dow administered a second review of plaintiff's job performance in July 2001. At the time of the review, plaintiff had not presented reports to Dow or Schneider on the soft grip project or the laser arbor project. According to defendant, both reports were originally earlier, deadlines were missed, and plaintiff was ultimately given until August 3, 2001, to complete both projects. Plaintiff admits that he missed deadlines on the two projects, but contends this was due in part to changes in his engineering team, and that Dow and Schneider gave plaintiff conflicting or incomplete statements of their expectations regarding reporting on the projects.

Plaintiff received a below expectations rating in four of the eight performance goals, a fully satisfactory rating on the other four goals, and an overall below expectations rating on the July 2001 review. Dow noted in the review that plaintiff needed to be more accountable for his team's actions, and that the current environment "creates no consequences for missing deadlines." Dow added that "Team is still in R&D mode vs. project mode." Dow also repeated her criticisms from the January 2001 review that plaintiff needs to be an "active manager," develop a more open dialog, explain his thoughts better, and respond appropriately to questions. As a result of the July 2001 review, plaintiff was placed on an eight-week notice that there would be zero tolerance of, (1) non-adherence to the IAD process and support documentation, and (2)

missing schedules.[4] The notice was signed by Dow and Schneider. Plaintiff disputes the accuracy of several of the individual ratings and comments in the review, as well as the calculation of the overall rating.

After his July 2001 review, plaintiff was instructed to complete three deliverable reports within the next few weeks. Plaintiff claims that Dow and Schneider failed to provide him with necessary information regarding the projects for at least a week, which delayed his work. Plaintiff submitted reports to Dow and Schneider on the soft grip and laser arbor projects in late July or early August. Defendant argues, based on reviews of the projects by Schneider and two other engineers employed by defendant, that the proposals contained several erroneous engineering assumptions, "had no value," and were "awful." Plaintiff was asked to give an oral presentation of at least one of the proposals to Schneider, which defendant alleges was equally unsatisfactory. Plaintiff contends that the proposals were sound, and submits the affidavit of another engineer, Barry Jacobs, in support of his claim.

Plaintiff claims that Dow and Schneider made comments to him in July or August 2001 that he perceived to be motivated by age animus. Plaintiff alleges that in July 2001, after plaintiff's report on his projects was poorly received by Schneider, Dow remarked to plaintiff that she was surprised at Schneider's reaction and that if she had known they wanted her to "clean house" she would not have taken the position. Plaintiff also claims he confronted Schneider about his perceived unfair treatment and his negative review, and Schneider responded that plaintiff was "better in former times." On August 15, 2001, Dow and Schneider informed plaintiff that he was terminated. After plaintiff's termination, Dow oversaw product development and managed plaintiff's former subordinates in the advanced development department.

Plaintiff names several older employees who suffered adverse employment decisions

---

[4]Neither party makes it clear, but it appears the "IAD process" was the version of the NPDP implemented in the advanced development department.

5

made by Dow and/or Schneider in 2000 and 2001. Al Kunz ("Kunz"), age fifty five and a senior project manager in marketing, received a favorable expectations review on May 25, 2000, from Dow, but in June 2000, Dow gave Kunz a corrective action plan and Kunz was placed on notice. Gregg Mangialardi ("Mangialardi"), age fifty one and a director of engineering, received an overall rating of below expectations in a review of his job performance by Schneider in January 2001. Mangialardi was subsequently demoted to a Project Leader in April 2001. Leon Bujalski ("Bujalski"), age sixty, was given a below expectations review by plaintiff, who was Bujalski's supervisor, in January 2001, and took early retirement in February 2001. Plaintiff claims he was pressured by Dow to give Bujalski a negative review.

Two younger employees were hired and promoted by SBPT in 2000 and 2001. Scott Griswold ("Griswold"), age twenty eight, was hired as a senior project engineer in January 2000, and became a project leader six months later. Plaintiff contends this was a promotion, but defendant argues it was a lateral move. Brian Ellis ("Ellis"), age forty one, was promoted in May 2001 to director of engineering. Plaintiff also alleges Steve Holzer, age thirty eight, was promoted, but submits no evidence in support.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir.

1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. See Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## DISCUSSION

### I. ADEA Claim (Count I)

To state a claim for intentional discrimination under the ADEA, a plaintiff has two options: he may satisfy his burden of proof by offering direct evidence of discriminatory intent; or he may demonstrate such intent indirectly by following the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Oxman v. WLS-TV, 846 F.2d 448, 452 (7th Cir. 1988) (extending the McDonnell Douglas test to ADEA cases). Because plaintiff does not present any direct evidence of discrimination, the court assumes he is relying on the McDonnell Douglas formula. Under this framework, the plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 505 (1993).

The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination under the ADEA, a plaintiff

7

must produce evidence that: "(1) he was in the protected age group; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably." Biolchini v. General Elec. Co., 167 F.3d 1151, 1153-54 (7th Cir. 1999).[5]

If a plaintiff succeeds in establishing a prima facie case, he creates a rebuttable presumption of discrimination, and the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employment decision. If the employer is successful, the presumption of discrimination dissolves, and the burden shifts back to the employee to prove that the employer's proffered reasons are a pretext for discrimination. See Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir. 1994). At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him. See Hughes v. Brown, 20 F.3d 745, 747 (7th Cir. 1994).

Plaintiff alleges that he was the victim of age discrimination, and that the negative performance reviews and his termination were pretextual. Defendant does not challenge plaintiff's prima facie case of age discrimination, but proffers a legitimate, non-discriminatory reason for plaintiff's termination: poor job performance. Defendant argues that there is no genuine issue of triable fact as to plaintiff's claim of pretext. A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1039 (7th Cir. 1993). Plaintiff must demonstrate that the explanation is dishonest, rather than merely an error. Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002) (citing Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 (7th Cir. 2000)). "A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used

---

[5] Despite plaintiff's attempts to style his claim as a reduction-in-force ("RIF") claim, and plaintiff's inclusion of numerous citations to RIF precedent in its briefs, the instant case is not an RIF or "mini-RIF" claim. Defendant does not argue for summary judgment on those terms, and there is no evidence that plaintiff's position was permanently eliminated by SBPT.

8

to cover one's tracks." Grube v. Lau Industries, Inc., 257 F.3d 723, 730 (7th Cir.2001) (internal quotations omitted).

It is uncontested that in January 2001 and July 2001, plaintiff received an overall rating of below expectations on his performance reviews. Plaintiff argues, however, that defendant's justification for his poor reviews and termination is undermined by plaintiff's thirteen-year history of positive performance reviews that ended only after Dow became his supervisor, and only after he was asked to perform engineering tasks that had not been part of his job responsibilities in many years. Essentially, plaintiff contends that he was set up to fail by Schneider, who plaintiff alleges caused him to be placed on the engineering projects and who heavily criticized plaintiff's engineering work, and by Dow, who carried out Schneider's plan.

A plaintiff may not, of course, avoid summary judgment merely by disagreeing with his employer's business decisions or by speculating about the defendant's motive. Rand v. CF Industries, Inc., 42 F. 3d 1139, 1145-46 (7th Cir. 1994). Where, however, the material facts specifically offered by one party contradict the facts offered by the party moving for summary judgment, the motion must be denied. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Here, plaintiff presents evidence based on his personal knowledge and other material facts that a reasonable jury could find to be pretext for age discrimination. A jury could infer that the statements allegedly made by Schneider and Dow, regarding plaintiff being better "in former times" and Schneider "cleaning house," respectively, indicated age animus. Likewise, Schneider and Dow were involved in two sets of personnel decisions in 2000 and early 2001 that, taken together, could support a jury finding of pretext: (1) the demotion or placing on notice of at least two older employees (Kunz and Mangialardi), and (2) the hiring or promotion of at least two substantially younger employees (Griswald and Ellis). In addition, plaintiff claims that he was pressured by Dow to give Bujalski, an older employee approximately plaintiff's age, a negative review. Although plaintiff admitted at his deposition that the negative review might have been warranted, he still contends he was pressured by Dow. Lastly, several material facts regarding plaintiff's job responsibilities before and after 2000,

the explanations and directions he received from Dow and Schneider, his conduct as a project leader, and the quality and timeliness of his work in 2000 and 2001, remain in dispute and are questions for the factfinder.

When an employee offers specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses. Collier v. Budd Co., 66 F.3d 886 (7th Cir. 1995). "This credibility judgment is best left to the finder of fact." Id., citing Courtney v. Biosound, Inc., 42 F. 3d 414, 423-24 (7th Cir. 1994). As the Seventh Circuit has said many times, summary judgment cannot be used to resolve swearing contests between litigants. Payne v. Pauley, 337 F. 3d 767 (7th Cir. 2003) (citations omitted). In the instant case, plaintiff presents the court with more than "grand conspiracy theories " and questions about defendant's business judgement, contrary to defendant's characterization. Plaintiff thus casts enough doubt on defendant's tendered reasons for plaintiff's negative reviews and his termination to make summary judgment inappropriate. Taken together, evidence offered by plaintiff, albeit it a bit thin, demonstrates genuine issues of material fact as to whether the negative reviews of plaintiff and the proffered reason for his termination were pretexts for age discrimination. Accordingly, the court denies defendant's motion for summary judgment on Count I of the complaint.

## II. IHRA Claim (Count II)

Simply stated, the court lacks subject matter jurisdiction over plaintiff's claim under the Illinois Human Rights Act ("IHRA") because the statute preempts judicial review until a final administrative order is entered. The IHRA states, "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation." 775 I.L.C.S. 5/8-11(C). The Seventh Circuit has held that "in light of the Illinois Human Rights Act, courts have no jurisdiction to hear independent actions for alleged human rights violations. Rather, judicial review is available only under the [IHRA] after the Human Rights Commission

has issued a final order on a complaint." Talley v. Washington Inventory Service, 37 F.3d 310, 312-13 (7th Cir. 1994)

Plaintiff filed charges with the Illinois Department of Human Rights on or about February 27, 2002, but plaintiff presents no evidence that a final order has been issued. Therefore, the court grants defendant's motion for summary judgment on Count II of the complaint for, at a minimum, his failure to exhaust the administrative remedies required by the IHRA.

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is denied as to Count I, and granted as to Count II.


**ENTER:**   **September 14, 2004**

Robert W. Gettleman
United States District Judge